UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

ALLIED MARITIME INC.,

        Plaintiff,

- against -

DESCATRADE SA a/k/a DESCA
TRADE SA,

        Defendant.

------------------------------------------------------- X

**OPINION AND ORDER**

09 Civ. 3684 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        On April 15, 2009, this Court authorized the issuance of a process of maritime attachment and garnishment ("PMAG") "against all tangible or intangible property belonging to, claimed by or being held for [Descatrade SA ("Descatrade")] by any garnishees" in this District, including BNP Paribas and HSBC Bank USA, N.A.[1]  On June 25, 2009, Descatrade, a Swiss company, issued a payment order to BNP Paribas, in Paris, France, ("BNP Paribas Paris") for an electronic funds transfer ("EFT") of $400,000 to another Descatrade account with

---

[1] Rule B Order, April 15, 2009.

1

HSBC France, also located in Paris, France.[2] BNP Paribus Paris then arranged to route the EFT to HSBC France through HSBC Bank USA, N.A. in New York, New York.[3] Subject to the PMAG served on BNP Paribas's New York branch ("BNP Paribas New York"),[4] BNP Paribas Paris suspended the EFT and placed it into a BNP Paribas suspense account.[5] Descatrade also sought countersecurity and brought a counterclaim against Allied Maritime, Inc. ("Allied") under Rule E(7) of the Supplemental Rules for Admiralty Proceedings of the Federal Rules of Civil Procedure.[6]

On October 16, 2009, the United States Court of Appeals for the Second Circuit issued *Shipping Corporation of India Ltd. v. Jaldhi Overseas Pte Ltd.*, holding, *inter alia*, that "[b]ecause EFTs in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under

---

[2] *See* Internal BNP Paribas Transfer Record, Ex. B to Declaration of Michael E. Unger, plaintiff's counsel, and Memorandum in Response to Court's *Sua Sponte* Order to Show Cause ("Unger Decl.").

[3] *See id.*

[4] Although lacking clarity, it can be deduced from the parties' briefs that process was served on BNP Paribas New York. *See* Unger Decl. ¶ 3; Descatrade Opp. at 2.

[5] *See id.* As addressed later, it is unclear whether the suspense account was located with BNP Paribas Paris or BNP Paribas New York ("BNP Paribas New York").

[6] *See* 9/8/09 Descatrade Answer and Counterclaim.

New York law, they cannot be subject to attachment under Rule B."[7]  On October 20, 2009, this Court issued an Order in the above captioned action directing Allied to show cause why this Court's PMAG Order should not be vacated and any funds attached as EFTs should not be immediately released.

On November 13, 2009, the Second Circuit issued *Hawknet, Ltd. v. Overseas Shipping Agencies*, holding that *Shipping Corporation of India* applies retroactively.[8]  As a result, EFTs may no longer be relied upon to maintain jurisdiction over a defendant that "'is not found within the district'" and that, as a result, a district court "would have to conclude that it can exercise personal jurisdiction over the defendant by some other means."[9]  The Second Circuit remanded the action "to the District Court with instructions to enter an order to show cause why it should not dismiss the complaint for lack of personal jurisdiction."[10]  On November 17, 2009 and November 23, 2009, Allied submitted responses to this Court's Order.[11]  Descatrade then responded on December 1,

---

[7]   585 F.3d 58, 71 (2d Cir. 2009).

[8]   No. 09 Civ. 2128, 2009 WL 3790654, at *3 (2d Cir. Nov. 13, 2009).

[9]   *Id.* (quoting Fed. R. Civ. P. Supp. R. B(1)(a)).

[10]  *Id.*

[11]  *See* 11/17/09 Unger Decl.; 11/23/09 Supplemental Declaration of Michael E. Unger and Supplemental Memorandum in Response to Court's *Sua Sponte* Order to Show Cause.  Allied also submitted the declaration of Professor

2009.

Allied raises two competing arguments in an attempt to convince this Court that it has jurisdiction over Descatrade – that BNP Paribas Paris was either (1) Descatrade's bank – thereby taking this case outside the scope of *Shipping Corporation of India* – or, (2) the intermediary bank and the UCC's "money back guarantee" provision should be invoked.[12] With regard to its first argument, if BNP Paribas Paris was the originator's bank, then *Shipping Corporation of India* would not apply. However, this Court would still lack jurisdiction. "A creditor of the originator can levy on *the account of the originator in the originator's bank* before the funds transfer is initiated . . . . The creditor of the originator cannot reach any *other funds* because no property of the originator is being transferred."[13] Under New York's separate entity rule, "each branch of a bank is treated as a separate entity . . . and is in no way concerned with accounts maintained by

---

Carl Felsenfeld. *See* 11/9/09 Declaration of Carl Felsenfeld, Professor of Law, Fordham University, plaintiff's expert. Descatrade objects to Professor Felsenfeld's declaration as inadmissible because it opines on legal conclusions. *See United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991). Because Professor Felsenfeld's declaration did not illuminate any areas of the New York Uniform Commercial Code ("UCC") with which I was not already familiar or could not learn through other sources, such as case law and treatises, I am not considering this declaration.

[12]   *See* 11/17/09 Unger Decl.

[13]   N.Y. U.C.C. § 4-A-502, cmt. 4 (emphasis added).

depositors in other branches or at a home office."[14] As such, "the mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment."[15]

> Not only are bank branches separate entities, but deposits made in a branch are *payable there and there only*. . . . A branch bank being separately indebted to its depositor, the existing obligation lies primarily between such branch bank and its depositor. *The conclusion follows as a necessary corollary that the debt owed by such a branch finds its situs within the territorial jurisdiction of such branch.*[16]

If Allied seeks to attach Descatrade's bank accounts, it may do so only at the branch where the account exists. Descatrade holds a bank account with BNP Paribas Paris – meaning that the debt owed to it has a situs in France, outside of

---

[14] *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242, at *3 (S.D.N.Y. Sept. 15, 2009).

[15] *Id.*

[16] *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53 (2d Cir. 1965) (emphasis added) (quotation marks omitted) (holding that an order of attachment "served on a branch office located in the Eastern District of New York, is ineffective to garnishee a bank account at a branch office of the same bank located in the Southern District of New York."). *Accord Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 608 (S.D.N.Y. 1997) (relying on the separate entity doctrine to hold that service on a bank's New York branch was insufficient to attach funds deposited at a branch in Scotland for purposes of quasi in rem jurisdiction under Rule B); *Woodlands, Ltd. v. Westwood Ins. Co., Ltd.*, 965 F. Supp. 13, 14 (D. Md. 1997) ("Federal admiralty law holds that a party may not obtain quasi in rem jurisdiction over another party through service on a branch of a bank found in a district other than the district where the bank account is maintained." (citing *Det Bergenske*, 341 F.2d at 53-54)).

this Court's jurisdiction.

       Allied argues in the alternative that BNP Paribas was an intermediary bank, *Shipping Corporation of India* does apply, but Descatrade retains an attachable interest in the EFT pursuant to the UCC "money back guarantee" provision.[17] Allied bases the existence of this interest on the suspense account maintained with BNP Paribas. Allied fails to clarify whether this suspense account is held with BNP Paribas Paris or BNP Paribas New York. If the former, then, as discussed above, the situs of the debt is outside this Court's jurisdiction. Although the latter scenario is unlikely, Allied's argument fails even if BNP Paribas New York held the suspense account because the debt owed to Descatrade remains in Paris.

       Section 402, known as the "money bank guarantee" provision, provides in pertinent part:

       (3) . . . With respect to a payment order issued to a

---

[17] Under Article 4A of the UCC, where an originator has already paid its bank the amount it seeks to transfer and that transfer is not completed for any reason, the originator is entitled to a refund. Where multiple banks are involved in the transfer chain – such as intermediary banks –, there is a reciprocal duty by each bank to issue a refund to the bank in the chain before it. In the event of an attachment at an intermediary bank where the intermediary bank cannot issue a refund due to court order, the originator retains a right to sue the bank even though the originator has no direct relationship with the intermediary bank. *See* N.Y. U.C.C. §§ 4-A-402(3)-(5); *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101-02 (2d Cir. 1998).

> receiving bank other than the beneficiary's bank, acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order . . . . The obligation of that sender to pay its payment order is excused if the funds transfer is not complete . . . . (4) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid [because the funds transfer was not completed], the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay.[18]

Put simply, "under Section 402(3), the sender's obligation to pay the receiving bank is excused in the event that the transfer is not completed. If payment has already been made, a sender can seek a refund from the bank it paid under Section 402(4)."[19] In *Grain Traders Inc. v. Citibank, N.A.*, the Second Circuit concluded that, generally, privity is required between the party seeking a refund and the bank from which it seeks that refund.[20] In accordance with that ruling, the Second Circuit affirmed the district court's dismissal of an originator's lawsuit under

---

[18]   N.Y. U.C.C. § 4-A-402(3), (4).

[19]   *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998).

[20]   *See id.* at 102 ("[W]e . . . conclude that § 4-A-402 allows each sender of a payment order to seek refund *only* from the receiving bank it paid," citing policies reasons such as Article 4-A's "primary goal[ ] to promote certainty and finality so that 'the various parties to funds transfers [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately.'" (quoting N.Y. U.C.C. § 4-A-102, cmt.) (emphasis added)).

section 402 where it was brought against an intermediary bank.[21]

There is no privity between Descatrade and BNP Paribas New York. Descatrade, as originator, instructed BNP Paribas Paris – the originator's bank – to transfer funds. BNP Paribas Paris then issued a payment order to BNP Paribas New York, an intermediary bank, to hold the funds. Under sections 402(3) and (4) and *Grain Traders*, Descatrade is in privity with BNP Paribas Paris only and has no attachable property interest in the right of refund from BNP Paribas New York.

Allied also contends that sections 4-A-402(3) and (4) confer an attachable property interest on Descatrade because no matter which entity has the right to sue the intermediary bank under *Grain Traders*, the attached funds will ultimately return to Descatrade. Thus, Allied argues, under section 4-A, it is Descatrade's interest in the return of the funds that has been attached.[22] Allied raises a similar argument under section 4-A-402(5).[23] Section 402(5) provides that where an intermediary bank cannot give a refund to an originator's bank because the intermediary is not permitted to do so by operation of law or otherwise suspends payments, then the "first sender in the funds transfer that issued an

---

[21] *See id.*

[22] *See* Unger Decl. ¶¶ 8-15.

[23] *See id.* ¶¶ 16-18.

instruction requiring routing through that intermediary bank is subrogated to the right of the bank that paid the intermediary bank to refund as stated in subsection (4)."[24] In such a scenario, the originator obtains a right to a refund from the intermediary bank directly, even though the originator has no direct relationship with the intermediary.[25]

Allied's argument that Descatrade retains a direct property interest in the attached funds now resting in the hands of an intermediary bank is compelling. It appears that such an interest could be attachable property under Rule B, which defines attachable property in the broadest of terms. Specifically, Rule B notes that process of attachment can reach all of "the defendant's tangible or intangible personal property"[26] and courts have construed this language expansively to recognize a variety of attachable interests – including funds in a bank account,[27]

---

[24] N.Y. U.C.C. § 4-A-402(5).

[25] *See id.*

[26] Fed. R. Civ. P. Supp. R. B(1)(a). *Accord Shipping Corp. of India*, 585 F.3d at 69 n.12 ("In Rule B attachment proceedings, jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant *has an interest*.") (emphasis added).

[27] *See Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996).

escrow in the court registry,[28] debts owed to a defendant,[29] and an arbitration award in defendant's favor.[30] Therefore, it is arguable that Descatrade retains an attachable interest in its right to a refund of the attached EFTs.

However, the Second Circuit's decision in *Shipping Corporation of India* made clear that EFTs in the possession of an intermediary bank are "neither the property of the originator nor the beneficiary."[31] Contrary to that holding, Allied now asks this Court to draw a line between EFTs in the possession of an intermediary bank and the interest created by the originator's right of refund in those same EFTs. Yet Allied ignores the fact that for the situs of such intangible interest to be found in New York, BNP Paribas New York must owe an obligation to repay the funds directly to Descatrade. It does not.

"Under New York law, . . . the situs of intangible property, such as

---

[28] *See Starboard Venture Shipping Inc. v. Casinomar Transp. Inc.*, No. 03 Civ. 644, 1993 WL 464686, at *5 (S.D.N.Y. Nov. 9, 1993).

[29] *See Trans-Asiatic Oil Ltd. v. Apex Oil Co.*, 743 F.2d 956, 960 (1st Cir. 1984).

[30] *See Oil Transport Co., S.A. v. Hilton Oil Transport*, No. 93 Civ. 1632, 1994 WL 757944, at *2 (S.D. Tex. July 25, 1994).

[31] *Shipping Corp. of India*, 585 F.3d at 71 ("'Neither the originator who initiates the payment nor the beneficiary who receives it holds title to the funds in the account at the correspondent bank.'" (quoting *Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria)*, 650 N.Y.S.2d 726, 727 (1st Dep't 1996))).

beneficial interests, is 'the location of the party of whom performance is required by the terms of the contract.'"[32] Payment orders are akin to contracts in that the acceptance of the order by the receiving bank "obliges" the sender to pay the bank the amount of the sender's order and, if the sender is not obliged to pay for some reason, the bank receiving payment is "obliged" to refund payment.[33] As applied to the money back guarantee, the party who is required to issue a refund to the originator is the intermediary bank. However, there is no contractual relationship between the originator and the intermediary bank. Thus, the intermediary bank owes a refund only to the entity that sent the EFT to it in the first place – the *originator's bank*.[34] Then, the originator's bank owes performance – *i.e.*, a refund – to the originator.[35] The originator is only in a contractual relationship with its bank. Thus, it is the location of the *originator's bank* that is relevant because the

---

[32]    *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507, 2009 WL 2568433 (S.D.N.Y. Aug. 18, 2009) (holding that funds frozen in New York were subject to attachment by New York courts) (quoting *ABKCO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675 (1976)).

[33]    N.Y. U.C.C. § 4-A-402(3) & (4). *Cf. In re Bennett Funding Group, Inc.*, 146 F.3d 136, 139 (2d Cir. 1998) ("[W]hen a depositor deposits funds into a general account he parts with title to the funds in exchange for a debt owed to him by the bank, thereby establishing a standard debtor-creditor relationship.").

[34]    *See Grain Traders, Inc.*, 160 F.3d at 102.

[35]    *See id.*

originator's bank is the party that owes performance to the originator. Under this rationale, BNP Paribas New York owes performance only to BNP Paribas Paris. In turn, BNP Paribas Paris owes performance to Descatrade. As a result, the situs of Descatrade's beneficial interest is the location of BNP Paribas Paris – here, France. Quite obviously, France lies outside this Court's jurisdiction.

The subrogated rights created by section 402(5) do not alter this analysis. Contrary to Allied's assertion, section 402(5) does not create a right of refund in Descatrade. Rather, section 402(5) creates rights in those originators that specifically designate the intermediary bank to be used in the transfer.[36] Not only is there no indication that Descatrade directed that BNP Paribas New York be used in this transfer, BNP Paribas New York was not part of the initial transfer at all – it was HSBC Bank USA, N.A. that was to serve as the intermediary bank. As in

---

[36] *See id.* ("Where a right to refund has been triggered because a transfer was not completed, but one of the banks that received payment is unable to issue a refund because it has suspended payments, the orderly unraveling of the transfer is prevented and the risk of loss will be borne by some party to the transfer. Article 4-A allocates that risk of loss to the party *that first designated the failed bank to be used in the transfer*. . . . Under Section 402(5), all intervening senders are entitled to receive and retain payment and the *party that designated the failed bank* bears the burden of recovery by being subrogated to the right of the sender that paid the failed bank.") (emphasis added) (citing N.Y. U.C.C. § 4-A-402, cmt. 2 (where "Bank A [the sender] was required to issue its payment order to Bank C [the insolvent bank] because Bank C was designated as an intermediary bank by Originator[,] . . . . Originator takes the risk of insolvency of Bank C.")); *see also* T. Baxter & R. Bhala, *Proper and Improper Execution of Payment Orders*, 45 Bus. Law. 1447, 1461-63 (1990) (same).

*Grain Traders*, Descatrade has no right to sue BNP Paribas New York for a refund. Accordingly, Descatrade has no attachable interest under section 402(5). To hold otherwise would serve only to circumvent the Second Circuit's unambiguous intent to eliminate attachments of EFTs in the hands of intermediary banks in this District.[37] Therefore, section 4-A does not create an attachable interest for purposes of Rule B such that this Court has jurisdiction over Descatrade.

Allied's remaining arguments – including that *Shipping Corporation of India* does not apply retroactively and that Descatrade's counterclaim subjects it to this Court's jurisdiction – have been rejected almost District-wide and I reject them as well.[38] Allied further requests discovery to determine the state of the funds

---

[37] There is no indication that when the Second Circuit issued *Shipping Corporation of India* it considered the possibility that defendants retained an attachable property interest in EFTs in the possession of intermediary banks through the UCC money back guarantee provision. The Second Circuit is aware that the provision exists and that it may create attachable property interests, as this issue has been raised before. *See Consub Delaware LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 112 n.4 (2d Cir. 2008) (noting that plaintiff had raised the money back guarantee argument on appeal but stated that "[b]ecause *New York law does not apply here* to the issue of permissibility of the attachment of the EFT funds, we do not reach questions of [defendant]'s property interest in the funds under New York law" (emphasis added)), *abrogated on other grounds by Shipping Corp. of India*, 585 F.3d at 71. The Circuit has now decided that New York law does apply. Nonetheless, for the reasons discussed above, the money back guarantee provisions do not create an attachable property interest in New York.

[38] *See Calais Shipholding Co.*, 2009 WL 4277246, at *3 (rejecting similar retroactivity argument); *Western Bulk Pte Ltd. v. Inspat Indus. Ltd.*, No. 08 Civ. 9776, 2009 WL 4039435, at *1 (S.D.N.Y. Nov. 23, 2009) (holding that

13

at the time they were restrained. The funds have been attached nearly six months. There is no reason to continue the attachment any longer, particularly where Allied is free to seek leave to amend its Complaint if, at some later date, it is able to determine that Descatrade has attachable property in the District.

IT IS HEREBY ORDERED that the ex parte Orders for Process of Attachment and Garnishment issued in this action be vacated.

IT IS FURTHER ORDERED that any funds attached as EFTs pursuant to those Orders be immediately released.

IT IS FURTHER ORDERED that the Complaint is hereby dismissed without prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
December 16, 2009

---

defendant's filing of a counterclaim in a Rule B action does not "destroy the essentially *quasi in rem* nature of the action or amount to consent to complete jurisdiction under general waiver principles") (quotation marks, alterations and citations omitted).

14

## - Appearances -

**For Plaintiff:**

Michael E. Unger, Esq.
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005
(212) 425-1900

**For Defendant:**

Richard V. Singleton, II, Esq.
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000